IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



JAMES H. WATSON, AND OTHERS       §
SIMILARLY SITUATED,               §
                                  §
        Plaintiffs,               §
                                  §
VS.                               §   NO. 4:15-CV-335-A
                                  §
CITY OF ALLEN, ET AL.,            §
                                  §
        Defendants.               §

MEMORANDUM OPINION
and
ORDER

After having considered the motion of plaintiff, James H.
Watson, to remand, the responses, the record, and applicable
authorities, the court concludes that the motion should be
denied.

I.

Proceedings to Date

On April 23, 2015, plaintiff, a citizen of Louisiana, filed
a class action petition in Texas state court against the State of
Texas, fifty-three Texas cities ("Cities"), three private
corporations, and a limited liability company in the 153rd
Judicial District Court of Tarrant County, Texas, alleging that
defendants were responsible for, and were participating in, the
enforcement of red light camera ordinances in violation of the

Texas Constitution.  Doc. 1, App. at 15.[1]  Specifically, plaintiff alleged that the Texas Legislature had enacted provisions of chapter 707 of the Texas Transportation Code and section 29.003(g) of the Texas Government Code that were in violation of the Texas Constitution, that the State of Texas had "fleeced the registered owners of vehicles" of an amount in excess of $128 million dollars with regard to red light camera citations, and that Cities had enacted ordinances, as authorized by the State of Texas, governing red light cameras, which violated the rights of plaintiff and others like him under the Texas Constitution.

Plaintiff asserted causes of action for reimbursement of funds paid for red light camera violations, for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68, ("RICO"), for common law misrepresentation, and for violation of the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41-.63, ("DTPA").  In addition, the petition included class action allegations.

On April 28, 2015, plaintiff filed his first amended petition in state court asserting essentially the same claims he had made in his original petition.  Id. at 86.  The action was

---

[1]The "Doc. ___" references are to the numbers assigned on the clerk's docket to the referenced items.

brought before this court by notice of removal filed May 5, 2015. Doc. 1.   There followed entries of appearance by counsel for the defendants, certificates of interested parties, and motions by various defendants for extensions of time in which to appear and answer or otherwise respond to the first amended petition and for leave to appear without local counsel.   Docs. 5, 6, 9-11, 33-38, 81, 86, 88-93, 102, 104, 105, 112, 114, 116, 121-123, 132.   Those motions were unopposed by plaintiff. Generally, the court granted the requested extensions of time, but denied leave to appear without local counsel.   Significant court time was devoted to rulings on those preliminary motions.

On May 27, 2015, defendant Xerox State & Local Solutions, Inc. f/k/a ACS State & Local Solutions, Inc. ("Xerox"), filed its motion to dismiss asserting that plaintiff lacked standing to sue Xerox inasmuch as plaintiff's claims arose out of a red light camera ticket he received while driving in the City of Southlake, whose red light camera program is administered by defendant Redflex Traffic Systems, Inc., and he suffered no injury at the hands of Xerox.   Doc. 88.   City of Garland filed its motion to dismiss on May 29, 2015.   Doc. 101.   On June 10, 2015, defendants American Traffic Solutions, Inc. and American Traffic Solutions,

L.L.C. (collectively, "ATS"), filed their motion to dismiss.[2] Doc. 128.

On June 15, 2015, plaintiff filed, without leave of court, his second amended complaint by which he abandoned his RICO causes of action. Doc. 134. The next day, he filed his response to Xerox's motion to dismiss, vigorously contesting the motion on the merits but making no argument that the court should not exercise its jurisdiction over this action. Doc. 137. On that same day, twenty-four Cities collectively filed their motion to dismiss. Doc. 138. They had filed their motion, and served a copy on counsel for plaintiff, on June 12, 2015, but the filing made on that date was stricken from the record because of a procedural defect. Doc. 129-33.

On June 22, 2015, defendant City of Fort Worth filed its motion to dismiss. Doc. 146.

On June 26, 2015, more than thirty days after removal of this action and after twenty-eight defendants had filed motions to dismiss, plaintiff filed a motion to remand. Doc. 149. Defendants had twenty-one days within which to respond. Rule LR 7.1(e) of the Local Civil Rules of this court.

---

[2]ATS, concerned that its first motion might have been moot, filed a second motion to dismiss on June 25, 2015, in response to plaintiff's second amended complaint. Doc. 147.

By order signed July 6, 2015, the court granted the motion of defendant Xerox to dismiss for lack of standing, and gave notice that it had tentatively concluded that plaintiff's claims against other the defendants who had caused him no injury should likewise be dismissed. Doc. 164 at 6-7. The court gave plaintiff an opportunity to respond to the proposed dismissal of claims against parties who may not have filed their own motions to dismiss for lack of standing.[3] Id. at 7. Plaintiff has now filed his response and a supplemental response. Docs. 185, 199. In the interim, on July 9, 2015, the court granted the motions to dismiss of twenty-four other defendants that were then pending and ripe for ruling. Final judgment was entered as to each dismissed defendant. Docs. 165, 177. Plaintiff filed motions to alter or amend those judgments. Docs. 182, 186. Numerous other defendants have filed their motions to dismiss. Docs. 172, 179, 181, 188, 190, 193, 195, 196, 204, 207, 211, 215, 217 many of which allege lack of standing as a ground for dismissal.

Twenty-eight defendants have filed responses in opposition to plaintiff's motion to remand. Doc. 208, 220, 222.

On the date of the signing of this memorandum opinion and order, the court issued an order titled "Order Re Motions to

---

[3]The order did not provide an extension of time for plaintiff to respond to motions that were already pending.

5

Alter or Amend Judgment" by which the court set aside its July 6, 2015 and July 9, 2015 final judgments as to certain defendants; and, the court issued a replacement final judgment as to certain defendants and issued an amendatory order clarifying and replacing the orders of dismissal the court signed July 6, 2015 and July 9, 2015.

## II.

### Grounds of the Motion

Plaintiff contends that the court must remand, notwithstanding the discretionary language contained in 28 U.S.C. § 1367, now that he has abandoned his RICO claims, and that the local controversy, home state, and/or discretionary exceptions to the Class Action Fairness Act, codified at 28 U.S.C. §§ 1332(d) and 1453, ("CAFA") apply. See 28 U.S.C. §§ 1332(d)(3) and (4).

## III.

### Analysis

The parties do not dispute that the court had subject matter jurisdiction over all pleaded claims when this action was removed from state court. The court had federal question subject matter jurisdiction under 28 U.S.C. § 1331 because of the RICO claims, and had supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. And, the court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). Section

1332(d)(3) of Title 28 provides for discretionary declination to exercise § 1332(d)(2) jurisdiction if certain facts exist, and § 1332(d)(4) provides for a mandatory declination to exercise § 1332(d)(2) jurisdiction if certain facts exist.  In either event, the court starts with § 1332(d)(2) jurisdiction if the § 1332(d)(2) facts exist, as they do in this action.

A.   Supplemental Jurisdiction

Moreover, even if CAFA jurisdiction were to be ignored, supplemental jurisdiction still exists over all the claims asserted in this action by reason 28 U.S.C. § 1367.  The court has exercised its discretion not to remand, and to decide on the merits the claims asserted by plaintiff against those defendants he lacks standing to sue.

Plaintiff argues that remand is required by reason of principles stated in Enochs v. Lampasas County, 641 F.3d 155, 158-63 (5th Cir. 2011).  That argument assumes incorrectly that Enochs has the effect of denying the court the discretion to retain jurisdiction over the state law claims once the federal law RICO claims were abandoned by plaintiff.

The fact that plaintiff amended his complaint to omit the RICO claims does not deprive the court of jurisdiction over the remaining claims.  That this is so was made quite clear by the

recent opinion of the Fifth Circuit in <u>Spear Marketing, Inc. v.</u>

<u>Bancorpsouth Bank</u> in which the Fifth Circuit explained:

> "[J]urisdictional facts are determined at the time
> of removal, and consequently post-removal events do not
> affect that properly established jurisdiction."  It is
> this court's established precedent that once a case is
> properly removed, the district court retains
> jurisdiction <u>even if</u> the federal claims are later
> dropped or dismissed.
>
> * * * * *
>
> We have stated on several occasions that a post-removal
> amendment to a petition that deletes all federal
> claims, leaving only pendent state claims, <u>does not</u>
> divest the district court of its <u>properly triggered</u>
> subject matter jurisdiction.  In a jurisdictional
> inquiry, we look at the complaint as it existed at the
> time the petition for removal was filed, regardless of
> any subsequent amendments to the complaint.

No. 14-10753, 2015 WL 3972246, at *3 (5th Cir. June 30,

2015)(footnotes omitted).  <u>See also</u> <u>Mendoza v. Murphy</u>, 532 F.3d

342, 346-47 (5th Cir. 2008); <u>Doddy v. Oxy USA, Inc.</u>, 101 F.3d

448, 456 (5th Cir. 1996).  Thus, plaintiff is wrong to say that

because of the lack of a federal question, the court has lost

supplemental jurisdiction.[4]

The principles expressed in <u>Enochs</u> support the court's

decision to continue to exercise its supplemental jurisdiction.

<u>Enochs</u> directs that in deciding whether to remand once the

---

[4]And, of course, omission of the RICO claim does not affect the court's independent CAFA jurisdiction.

8

federal claim is abandoned, the court consider both the statutory factors set forth in 28 U.S.C. § 1367(c), and the common law factors of judicial economy, convenience, fairness, and comity. 641 F.3d at 159.  And, it instructs that the court is to guard against improper forum manipulation. Id.

The statutory factors are: (1) whether the state law claims raise novel or complex issues of state law; (2) whether the state claims substantially predominate over the federal claims; (3) whether the federal claims have been dismissed; and (4) whether there are exceptional circumstances or other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). The overall balance of these factors is important. Enochs, 641 F.3d at 159.

Here, unlike in Enochs, the statutory factors do not "certainly favor remand."  641 F.3d at 159.  Although plaintiff would have the court believe that his claims are novel and unique, raising complex issues of state law, the issue that led to the dismissals for lack of standing is not.  While the parties and the court devoted significant resources to the presentation of and resolution of the motions to dismiss, in the final analysis the issue that the dismissals turned on was a relatively uncomplicated issue as to whether plaintiff had standing to sue Cities and private entities who had done nothing to harm him. Thus, the "novel or complex issue of State law" factor favors

retention of supplemental jurisdiction as to the claims against all those defendants who had entitlement to dismissal because of lack of standing.

The second § 1367(c) factor does not appear to weigh one way or the other.  As pleaded in state court, the RICO claims appear to have had equal status with the state law claims.  While the court generally is putting CAFA jurisdiction out of consideration in the discussion under this heading, the court notes that the third factor favors retention of jurisdiction over all claims inasmuch as the court has not dismissed all claims over which it has original jurisdiction, i.e., CAFA jurisdiction.

The fourth § 1367 factor weighs in favor of retaining jurisdiction because there are no exceptional circumstances here that provide compelling reasons for declining jurisdiction.  To the contrary, there are exceptional circumstances for retaining supplemental jurisdiction, at least as to those claims that are meritless by reason of lack of standing.  Sending those claims back to state court would serve unnecessarily to multiply the time and expense incurred by fifty-two Texas municipalities if they were to be required upon a return to state court to again go through the procedures they already have gone through in federal court to persuade the court that the state law claims against them should be dismissed.  The waste of taxpayer-generated funds

10

that would result from such an outcome is an exceptional circumstance as to why this court has properly maintained, and should maintain, supplemental jurisdiction for resolution of those claims. On the other hand, there is no compelling reason why this court should not exercise its supplemental jurisdiction to accomplish dismissal of those claims. Thus, on balance, the statutory factors weigh in favor of exercising jurisdiction.

The court also has considered the common law factors as set forth in <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343 (1988). <u>Enochs</u>, 641 F.3d at 159. In analyzing the first factor, judicial economy, the Fifth Circuit directs the court to consider the amount of litigant and judicial resources already devoted to the consideration of the Texas state law claims. Here, the court has devoted time to researching and ruling on motions to dismiss filed by a number of the defendants and in reaching the decision that the claims against most of the defendants should be dismissed. The court is satisfied that it has substantial familiarity with the laws at issue such that judicial economy did not require remand of the claims the court has dismissed and those the court has concluded must be dismissed. Moreover, there is no question but that if the action is remanded, plaintiff will attempt to retry the issues this court has already decided, thus causing an unnecessary duplication of effort by the state court

11

and the parties.   Further proceedings as to those issues in state court would cause redundancy and waste of scarce judicial resources.   See Mendoza, 532 F.3d at 347.

The factor of convenience likewise does not weigh in favor of remand.   The federal courthouse in Fort Worth is just a few blocks down the street from the state courthouse from which this case was removed.   Resolving the state law issues in the federal courthouse is just as convenient for the litigants as a resolution in the state courthouse would be.   Moreover, as to the fairness issue, it would be grossly unfair to the defendants who have been granted judgment in their favor and the other defendants who have entitlement to judgment on the same ground to have to return to state court and fight the same battles again. Plaintiff has already had a fair opportunity to make his case for standing to sue the various defendants.   Fairness does not require that he be granted another chance.   And, comity does not override any of the other factors, all of which point to exercise of jurisdiction.

Lastly, the Supreme Court and Fifth Circuit have directed the court to consider whether the plaintiff has engaged in manipulative tactics in pursuing remand.   See Carnegie-Mellon,

484 U.S. at 357; <u>Brown v. Southwestern Bell Tel. Co.</u>, 901 F.2d
1250, 1255 (5th Cir. 1990).[5] Such appears to be the case here.
Plaintiff's counsel indicates he was very familiar with CAFA and
all of its provisions. Plaintiff, through his counsel,
undoubtedly knew when he filed this action in state court by a
pleading that included RICO claims that there was a significant
probability that one or more of the many defendants would remove
the case to this court based on federal court jurisdiction; and,
he undoubtedly had the same awareness as to the prospect of
removal to federal court because of his class-action allegations.
By pleading in state court claims that almost certainly would be
removed to federal court, plaintiff not only engaged in a judge-
selection process but also a process by which he might test the
water in both courts.

Once the case was removed, plaintiff, through counsel,
willingly participated in the processing of his case in this
court without raising a claim that the case should be remanded to
state court until after this court and the defendants had devoted
significant time and energy to the case and he had seen multiple

-----

[5]<u>Brown</u>, in reliance on principles expressed by the Supreme Court in <u>Carnegie-Mellon</u>,
cautioned:

> [C]ourts should consider whether the plaintiff has attempted to manipulate the forum in
> which his case will be heard simply by deleting all federal-law claims from the complaint
> and requesting that the district court remand the case, and should guard against such
> manipulation by denying motions to remand where appropriate.

<u>Brown</u>, 901 F.2d at 1255 (internal quotation marks omitted).

motions to dismiss for lack of standing, which he must have assumed that this court would grant.  Not until then, fifty-two days after the case had been removed and plaintiff had tested the water in federal court, did plaintiff take steps to attempt to cause the case to be remanded.

Rather than immediately upon removal of the case to this court dropping the RICO claims and filing his motion to remand, plaintiff waited until motions to dismiss had been filed. And, when he saw those motions, he knew that lack of standing was a real problem for him. Even though the outcome of the motions would have been the same, plaintiff seems to have thought that he had a better chance of persuading a state court judge to allow him to continue to assert all of his claims.  Plaintiff filed his second amended complaint and waited ten days before filing his motion to remand, perhaps having considered the dissenting opinion in Enochs. 641 F.3d at 167 ("simultaneous motions to dismiss and to remand could have been seen as a clear attempt to get [the] case sent back to state court").

B.   CAFA Provides An Independent Basis for Jurisdiction

Having made his argument that "pendent or supplemental jurisdiction would not provide the basis for jurisdiction over the remaining state law claims in this matter," plaintiff turns to the argument that CAFA would not provide a basis for the court

to retain jurisdiction. Doc. 150 at 11. This argument, too, is without merit.

Generally speaking, CAFA gives district courts original jurisdiction of class actions in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and any member of the class of plaintiffs is a citizen of a State different from any defendant. 28 U.S.C. § 1332(d)(2). These requirements exist here. And, removal was proper under 28 U.S.C. § 1453(b).

Pursuant to 28 U.S.C. § 1447(c), a motion to remand a case on the basis of any defect "other than lack of subject-matter jurisdiction" must be made within thirty days after the filing of the notice of removal. Of course, the motion for remand here is not for lack of subject matter jurisdiction, but rather on the basis that the court should decline to exercise its jurisdiction because certain conditions exist. Even if this did not fit the category of "defect," the time for filing such a motion is not unlimited. Rather, the motion would have to be filed within a reasonable amount of time, which may be significantly shorter in situations where remand is generally apparent from the time of removal. Graphic Communications Local 1B v. CVS Caremark Corp., 636 F.3d 971, 974-76 (8th Cir. 2011). See also Gold v. New York Life Ins. Co., 730 F.3d 137, 142 (2d Cir. 2013). The filing of

the motion to remand fifty-two days after the notice of removal,
after the court and the defendants had engaged in significant
preliminary case activity, and after defendants had devoted the
time and energy to the preparation and filing of meritorious
motions to dismiss was not reasonable.  See Gold, 730 F.3d at 142
(a motion for remand in a case like this should be filed "at the
earliest practicable time").

Even if the motion to remand had been timely filed, the
court need not reach the matter of whether plaintiff has met his
burden of showing that the court should abstain from exercising
CAFA jurisdiction based any exceptions.  Frazier v. Pioneer
Americas, L.L.C., 455 F.3d 542, 546 (5th Cir. 2006)(burden on
plaintiff to show applicability of CAFA exceptions).  The court
is satisfied that it may exercise supplemental jurisdiction for
all of the reasons discussed in the preceding section of this
opinion. Further discussion of CAFA would serve no purpose.

C.   Conclusion

For the reasons stated above, the court has concluded that
plaintiff's motion to remand should be denied.  The court is
firmly convinced that it is correct in retaining its jurisdiction
for the resolution of the claims against those defendants who are
entitled to have the claims against them dismissed because of
plaintiff's lack of standing to assert them.  As to the remaining

claims, the court will review again the possibility of a remand

of those claims after the court has devoted more attention to a

definition of the issues involved in those claims, the weighing

of the factors that would determine whether a remand to state

court as to those claims would be appropriate, and the effect of

CAFA on the possibility of a remand of those claims.

## IV.

### Order

Therefore,

The court ORDERS that plaintiff's motion to remand be, and

is hereby, denied.

SIGNED July 29, 2015.

JOHN McBRYDE
United States District Judge